UNITED PACIFIC INSURANCE
COMPANY, Plaintiff,

v.

DURBANO CONSTRUCTION COMPANY INC., d/b/a Western Railroad Builders, and David L. Durbano, Defendants.

No. 90–C–1041B.

United States District Court,
D. Utah, C.D.

Oct. 29, 1992.

Thomas R. Karrenberg, Salt Lake City, Utah, for plaintiff.

Douglas M. Durbano, Ogden, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on defendants Durbano Construction Company, Inc., d/b/a Western Railroad Builders, and David L. Durbano's (collectively "defendants") Motion to Dismiss for Lack of Jurisdiction over the Subject Matter, and plaintiff United Pacific Insurance Company's ("plaintiff") Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11. A hearing on both motions was held on October 16, 1992. Defendants were represented by Douglas M. Durbano, and plaintiff was represented by Thomas R. Karrenberg. Before the hearing the court consid-

ered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to both motions. Now being fully advised, the court renders the following Memorandum Decision and Order.[1]

### BACKGROUND

On April 22, 1983, plaintiff and defendants executed a continuing agreement of indemnity ("indemnity agreement") whereby plaintiff would issue performance bonds in connection with defendants' construction projects and defendants would indemnify plaintiff against certain liabilities. Pursuant to this agreement, on April 17, 1986, plaintiff executed a bond for $1,263,109.10 on behalf of defendant Durbano Construction Company, Inc. ("Durbano Construction") to guarantee completion of Durbano Construction's building project for Iowa Interstate Railroad, Ltd. ("Iowa Railroad"). In October, 1987, Durbano Construction brought suit against Iowa Railroad in this court for breach of contract, and that action later was removed to the United States District Court for the Southern District of Iowa (the "Iowa litigation").[2] Iowa Railroad brought a counterclaim against Durbano Construction for breach of contract and against plaintiff pursuant to plaintiff's bond.

On December 4, 1990, plaintiff filed a complaint in this court (the "Utah litigation") demanding that defendants deposit with plaintiff the sum of $50,000.00 as a reserve account to cover any loss that plaintiff might suffer in the Iowa litigation.[3] Defendants refused this request, instead filing a counterclaim for abuse of process alleging that plaintiff's complaint in the Utah litigation was merely an attempt to force a settlement of the Iowa litigation. The parties also disagreed as to whether the indemnity agreement required defendant to accede to plaintiff's demand that defendant establish the reserve account.

On January 10, 1991, defendants filed a motion to dismiss the Utah litigation pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction over the subject matter (the "first motion to dismiss"). Defendants based this claim on their assertion that "[p]laintiff does not begin to come close to satisfying the threshold amount in controversy required to create subject matter jurisdiction ($50,-000.00)." (Mem.Pts. & Auth.Supp. First Mot.Dis. at 7 (filed January 10, 1991.))

The first motion to dismiss was heard by the Honorable David Sam, United States District Judge for the District of Utah, on February 27, 1991. After considering the parties' memoranda and arguments at the hearing, Judge Sam denied the motion, ruling:

> ... the Court is left only with the question regarding the jurisdictional amount. Quoting from the defendants' memorandum in support of his motion to dismiss[,] in attempting to determine the amount in controversy the Court may only consider the amount in controversy as of the date the lawsuit was commenced. The court may not look to collateral matters.

---

1. This case is currently pending before the Honorable Dee V. Benson, United States District Judge for the District of Utah. By letter dated September 23, 1992, Judge Benson referred this case to this court for the sole purpose of deciding the two motions discussed herein.

2. *Western R.R. Builders v. Iowa Interstate R.R.,* Civil No. 89–19–D–2 (S.D.Iowa).

3. Pursuant to the indemnity agreement, defendants promised to:

   [I]ndemnify, and keep indemnified, and hold and save harmless the Surety [plaintiff] against all demands, claims, loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefor, sustained or incurred by the Surety by reason of executing or procuring the execution of any said Bond or Bonds, or any other Bonds, which may be already or hereafter executed on behalf of the Contractor [defendants], or renewal or continuation thereof; or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining their release therefrom ... or enforcing by litigation or otherwise any of the agreements herein contained. Payment of amounts due Surety hereunder together with legal interest shall be payable upon demand. Indemnity Agreement at 1, ¶ 2.

How much plaintiff has already spent or how much it may actually end up spending on attorneys' fees and costs are both collateral issues to the amount in controversy as of the date this lawsuit was filed.

The Court finds the amount in controversy to be in excess of the jurisdictional requirement. There is over $50,000.00 in dispute. The defendants do not deny that the $50,000.00 is in dispute, rather they ask this Court to value that sum, not as $50,000.00, but as the cost to the defendant of supplying the money.

(Hr'g Tr.Mot. Dismiss Feb. 27, 1991 at 3–4.) Judge Sam followed this oral decision with a written order on April 3, 1991, which stated: "IT IS HEREBY ORDERED that defendants' Motion to Dismiss Pursuant to FRCP 12(b)(1) be and the same hereby is denied." (Order of Apr. 3, 1991.)

On February 24, 1992, the counterclaim against plaintiff in the Iowa litigation was dismissed with prejudice pursuant to a settlement agreement, with Iowa Railroad agreeing to pay defendants $12,000.00. Plaintiff thereupon moved for summary judgment on defendants' claim that plaintiff's complaint in the Utah litigation was an abuse of process. On March 19, 1992, the Honorable Dee V. Benson[4] granted plaintiff's motion, concluding that "defendants have not persuaded the court that they have presented facts sufficient to meet the required elements of an abuse of process claim." (Mem.Dec. & Order of Mar. 19, 1992 at 6.)

Less than two months after plaintiff's motion was granted and in contravention of Judge Sam's ruling to the contrary, on May 13, 1992, defendants renewed their claim that the amount in controversy is insufficient to invoke the diversity jurisdiction of this court (the "second motion to dismiss").

In response, plaintiff has moved this court for sanctions against defendants.

The court first addresses defendants' second motion to dismiss and then turns to plaintiff's motion for sanctions.

## SUBJECT MATTER JURISDICTION

Defendants' argument in their second motion to dismiss is straightforward. Defendants claim that

[b]ased upon the order of dismissal in the Iowa Litigation ... [p]laintiff no longer has any basis whatsoever to seek damages in the amount of the reserve demand of $50,000.00. Indeed, the dismissal of the Iowa litigation, with Iowa Interstate paying Defendants herein the sum of $12,000.00 is conclusive proof that a reserve as demanded by Plaintiff was totally unnecessary. Thus, in the present action, Plaintiff's claims are reduced to recovery of attorney's fees incurred in the Iowa Litigation. Since these fees approximated $15,000.00 in February of 1991, there is no possibility that such fees have increased to $50,000.00 as of today.... [I]t is a legal certainty that Plaintiff's claim really is for less than the jurisdictional amount required under 28 U.S.C. § 1332.

(Df.'s Mem.Supp. Second Mot. Dismiss at 3–5.) Plaintiff disagrees, claiming this court has jurisdiction because "when the Complaint was filed, the jurisdictional amount was properly pled in good faith." (Pl.'s Mem.Opp.Mot. Dismiss at 5–6.)

■ It is a well-settled principle of federal law that "[w]hen determining whether the amount in controversy has been satisfied, we examine the complaint at the time it was filed. Jurisdiction, once established, cannot be destroyed by a subsequent change in events." *Klepper v. First American Bank,* 916 F.2d 337, 340 (6th Cir.1990) (citations omitted).[5] When he denied defendants' first motion to dismiss,

---

4. The Utah litigation was reassigned to Judge Benson on November 1, 1991, after Judge Benson's appointment and confirmation to the federal bench. (*See* Notice of Jud. Reassignment of Nov. 1, 1991 at 1.)

5. The cases applying this principle are numerous and unanimous. *See, e.g., Sarnoff v. American Home Prods. Corp.,* 798 F.2d 1075, 1077–78

(7th Cir.1986); *Zumerling v. Devine,* 769 F.2d 745, 748–49 (Fed.Cir.1985) (amount in controversy determined from pleadings without consideration of success on the merits); *Strey v. Hunt Intern. Res. Corp.,* 749 F.2d 1437, 1441 (10th Cir.1984) (jurisdictional amount determined "at the time the case was commenced"), *cert. denied,* 479 U.S. 870, 107 S.Ct. 237, 93

Judge Sam clearly articulated his finding that at the time plaintiff's complaint was filed, the complaint alleged the requisite jurisdictional amount in good faith.[6] In their second motion to dismiss, defendants have brought forth no additional evidence relating to conditions as they existed when plaintiff filed its complaint. Therefore, the court sees no reason to revisit Judge Sam's conclusion that plaintiff properly invoked this court's jurisdiction.[7]

■■■■ Rather than bring forth additional evidence of conditions as they existed when the complaint was filed, in their second motion to dismiss defendants rely on an event that occurred subsequent to the filing of the complaint: the settlement of the Iowa litigation. In their memoranda, defendants assert that the amount of defendants' recovery in the Iowa litigation renders it a "legal certainty" that plaintiff cannot recover $50,000.00 in the Utah litigation, and defendants claim that fact deprives this court of jurisdiction.[8]

In light of the universal acceptance and application of the rule discussed above, this claim is without merit and, in fact, frivolous. The cases could not be more clear that in determining whether the amount in controversy requirement has been satisfied, the court must look at events at the time the complaint was filed, and not at subsequent events.[9] Even after being apprised of this rule by Judge Sam, defen-

L.Ed.2d 162 (1986); *Nationwide Mut. Fire Ins. Co. v. T & D Cottage Auto Parts*, 705 F.2d 685, 687 (3rd Cir.1983) (amount in controversy determined at time complaint filed); *Bank IV Salina N.A. v. Aetna Cas. & Sur. Co.*, 783 F.Supp. 1315, 1317 (D.Kan.1992) ("Subsequent events cannot destroy the court's jurisdiction once it has been acquired."). *See generally* 1 Moore's Federal Practice ¶ 0.91[3], at 850 (2d ed. 1991) ("subsequent events and occurrences cannot normally destroy the jurisdictional amount requuisite"); 14A Wright, Miller & Cooper, Federal Practice and Procedure § 3702 (1985) (same).

6. That amount properly includes attorneys' fees because plaintiff may recover them as an element of damages. *Bank IV Salina*, 783 F.Supp. at 1317.

7. Implicit in this conclusion is the finding that plaintiff has alleged the jurisdictional amount in good faith and not merely to acquire access to the federal courts. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) ("the sum claimed by the plaintiff controls if the claim is apparently made in good faith") (citations omitted).

8. *See* Df.'s Mem.Supp. Second Mot. to Dismiss & Opp. to Pl.'s Mot. Sanctions at 4 ("Plaintiff could never recover damages in this case of $50,000.00 or more."); *id.* at 5 ("In the case at bar, there is no question that Plaintiff cannot prove damages of $50,000.00 or more, the minimum to establish subject matter jurisdiction in this court."); Df.'s Mem.Supp. Second Mot. to Dismiss at 3 ("Based upon the order of dismissal in the Iowa litigation ... Plaintiff no longer has any basis whatsoever to seek damages in the amount of the reserve demand of $50,000.00."); *id.* at 4 ("Since [plaintiff's attorneys'] fees approximated $15,000.00 in February of 1991, there is no possibility that such fees have increased to $50,000.00 as of today."); *id.* ("In this case, Plaintiff can no longer be awarded $50,000.00 as its

reserve demand...."); *id.* ("Since these [plaintiff's attorneys' fees] could not possibly have accumulated to the amount of $50,000.00, it is a legal certainty that Plaintiff's claim really is for less than the jurisdictional amount required under 28 U.S.C. § [ ] 1332. For that reason, Plaintiff's complaint must be dismissed for lack of subject matter jurisdiction.").

9. Even the cases cited by defendants do not support their conclusions, but state the rule that diversity jurisdiction is determined as of the time the complaint is filed. For example, defendants cite *Wiggins v. North American Equit. Life Assur. Co.*, 644 F.2d 1014, 1017 (4th Cir.1981), for the proposition that "[i]f the legal impossibility of recovery of the minimal jurisdictional amount is so certain that it virtually negates the Plaintiff's good faith in asserting the claim, the court must dismiss the action for lack of jurisdiction." (Df.'s Mem.Supp. Second Mot. to Dismiss at 4.) Based on that rule, the *Wiggins* court remanded the case to the district court with instructions to remand the matter to state court because the insurance policy at issue had a face value of only $8,000.00, $2,000.00 less than the jurisdictional minimum. *Id.* at 1015. Defendants fail, however, to cite completely the court's reasoning for its decision. The court clearly held that "[i]n our view the $10,000 jurisdictional amount was clearly never present, *even when suit was initiated...." Id.* (emphasis supplied). Thus, *Wiggins* merely states the general rule and does not hold that an event occurring after the filing of the complaint can remove a court's jurisdiction.

Likewise, defendants cite *King v. Morton*, 520 F.2d 1140 (D.C.Cir.1975), claiming that case as "the most analogous to the one at bar." (Df.'s Mem.Supp. Second Mot.Dismiss at 4.) Like *Wiggins*, however, *King* does not support defendants' position on this motion. On appeal in *King* was the district court's dismissal for lack

dants still argue that "there is no question that Plaintiff cannot prove damages of $50,000.00 or more, the minimum to establish subject matter jurisdiction in this court." (Df.'s Mem.Supp. Second Mot. to Dismiss & Opp. to Pl.'s Mot. Sanctions at 5.) As the above cited cases make clear, however, this court's jurisdiction does not turn on the amount of damages plaintiff will be able to prove at trial, but the amount of damages that plaintiff has in good faith plead in its· complaint.[10]

In sum, defendants have presented the court with no additional evidence of conditions as they existed at the time the complaint in this matter was filed. Accordingly, defendants' second motion not only is without merit, but is a frivolous attempt to relitigate Judge Sam's denial of the first motion to dismiss. ·

## RULE 11 SANCTIONS

In response to defendants' second motion to dismiss plaintiff has moved this court to

of jurisdiction of a taxpayer's claim that he was entitled to a trial by jury on the charge of willful failure to pay his income tax. *Id.* at 1142. The district court had dismissed the case for lack of subject matter jurisdiction based on its finding that King had failed to meet the jurisdictional minimum of $10,000.00. After King had filed his complaint, he was convicted of tax evasion and ordered to pay $1,098.26 in back taxes, a fine of $250.00, and court costs of $25.00. Thus, the total amount of King's actual liability was much less than $10,000.00, and the district court accordingly dismissed the case. *Id.* at 1145. On appeal, the United States Court of Appeals for the District of Columbia Circuit reversed the dismissal for lack of jurisdiction, holding the amount in controversy "which must exceed $10,000, is not the cost to King of his conviction, but the value of his right to a trial by jury." *Id.*

*King*, therefore, stands for the proposition that even where a party's liability does not meet the jurisdictional minimum, the district court may still exercise subject matter jurisdiction over the matter if, on the specific facts of the case, the value of a constitutional right exceeds the jurisdictional minimum. *King* does not stand for the proposition that events that occur after the filing of the complaint can oust the court's jurisdiction. Thus, contrary to defendants' claim, the facts of *King* are not analogous to those of the instant case.

Defendants also rely on *Sellers v. O'Connell,* 701 F.2d 575 (6th Cir.1983). In *Sellers,* on December 1, 1972, the plaintiff filed his complaint for pension benefits alleging more than $10,-000.00 in damages. *Id.* at 577–78. The plaintiff was unaware, however, that on November 30, 1972, the pension fund's trustee had ruled that the fund owed plaintiff only $9,875. The appellate court held that as of the date the complaint was filed—December 1, 1972—plaintiff's "claim for more than $10,000 was therefore merely colorable" and was, in effect, a claim for liquidated damages. *Id.* "[T]he facts show to a legal certainty that appellant was entitled to recover no more than $9,875 on December 1, 1972," the date the complaint was filed. *Id.* at 579. *Sellers* thus stands for the proposition that a district court properly considers evidence of conditions as they existed on the date the complaint was

filed, even if that evidence comes to light after the complaint is filed.

Accordingly, if, after plaintiff in the instant case had filed its complaint, defendants had presented evidence of conditions as they existed as of the time plaintiff filed the complaint, this court would properly consider that evidence in resolving defendants' motion. As previously explained, however, the events in the Iowa litigation occurred subsequent to the filing of the complaint and are irrelevant.

Finally, the court rejects defendants' argument that the dismissal of ·the Iowa litigation shows "to a legal certainty" that plaintiff cannot recover damages in excess of $50,000.00. Iowa Railroad's payment to defendants resulted from a.settlement agreement. Without making any comment on whether plaintiff will in fact recover damages in this case, for purposes of this motion it is sufficient to note that defendants have failed to show how plaintiff's recovery is circumscribed by the settlement of the Iowa litigation. Thus, defendants' "legal certainty" claim is unsupported by the facts of this case and the applicable law. *See* 14A Wright, Miller & Cooper, Federal Practice and Procedure § 3702, at 49–50 (1985) ("Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction.") (citations omitted).

10. Defendants attempt to avoid this obvious conclusion by claiming that plaintiff is relying on subsequent events, and not defendants. This claim, however, is contrary to the plain language of defendants' memoranda. Defendants claim the dismissal of the Iowa litigation is not a subsequent event, but "simply clarifies for this court that Plaintiff's demand for a reserve in the amount of $50,000.00 was never necessary, and this court never had jurisdiction over this matter." (Df.'s Mem.Supp.Mot. Dismiss & Opp.Pl.'s Mot.Sanctions at 2–3.) At best, the defendants have confused the distinction between evidence that relates to an event that occurred before the complaint was filed and an event occurring subsequent to that filing.

impose sanctions on defendants pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") arguing that defendants' motion is frivolous and "part of a stratagem to obtain a new forum." (Pl.'s Mem.Opp. Second Mot.Dis. & Supp.Mot. Sanctions at 7.) Defendants respond that sanctions are inappropriate because their motion "is not unfounded or unwarranted by existing law." (Df.'s Mem.Supp. Second Mot.Dismiss & Opp.Mot Sanctions at 6.)

After carefully reviewing the facts of this case and the applicable law, the court is convinced that Rule 11 requires that sanctions be imposed against defendants for filing a frivolous motion.

*Rule 11.*

■■■ Rule 11 is "aimed at curbing abuses of the judicial system" by requiring litigants to certify that any papers filed are well founded. *Business Guides v. Chromatic Communications Ent.*, 498 U.S. 533, ——, 111 S.Ct. 922, 928, 112 L.Ed.2d 1140 (1991). Under Rule 11, an attorney's signature on a motion or other paper constitutes a certificate

> that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11 [11]. Whether an individual's conduct violates Rule 11 is measured by an objective standard of reasonableness under the circumstances. *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir.1988); *see also* 5A Wright and Miller, Federal Practice and Procedure § 1335, at 61–62 (1990) ("The objective standard of reasonableness under the circumstances of the case has been embraced by all thirteen circuits."). Thus,

Rule 11 looks to the objective reasonableness of the argument, and not to counsel's state of mind. *Beeman v. Fiester*, 852 F.2d 206, 211 (7th Cir.1988). Under Rule 11, "the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances." *White v. General Motors Corp., Inc.*, 908 F.2d 675, 680 (10th Cir.1990).

*Defendants' Motion.*

This court already has found that defendants' second motion to dismiss was without merit and frivolous; that motion was not made in good faith after a reasonable inquiry into the applicable law as required by Rule 11. This finding is based on the following. Defendants based their first motion to dismiss on the argument that plaintiff had not alleged the jurisdictional minimum amount in its complaint. The parties briefed that issue and Judge Sam conducted a hearing at which the parties presented their arguments. Judge Sam rejected the first motion to dismiss, specifically finding "the amount in controversy to be in excess of the jurisdictional requirement. There is over $50,000.00 in dispute." (Hr'g Tr.Mot. Dismiss Feb. 27, 1991 at 3–4.) Judge Sam explained to defendants that this finding was based on the rule that "in attempting to determine the amount in controversy the Court may only consider the amount in controversy as of the date the lawsuit was commenced. The court may not look to collateral matters." (*Id.*)

Defendants brought their second motion to dismiss based upon this same argument: that plaintiff has failed to allege the jurisdictional minimum amount in its complaint. In addition to repeating many of the same arguments as in their first motion, defendants supported their second motion with evidence of the dismissal of the Iowa litigation, an event that occurred after the filing of the complaint. Defendants made this

---

**11.** Recently, the United States Supreme Court declared that

> The heart of Rule 11 is sentence [5], which explains in detail the message conveyed by the signing of a document. A signature certifies to the court that the signer has read the document, has conducted a reasonable inqui-

ry into the facts and the law and is satisfied that the document is well-grounded in both, and is acting without any improper motive. *Business Guides,* 498 U.S. at ——, 111 S.Ct. at 929; *see also White v. General Motors Corp., Inc.,* 908 F.2d 675, 679 (10th Cir.1990) (same).

argument in contravention of the well-established rule that the court cannot consider events occurring after the filing of the complaint in determining the amount in controversy. In fact, not only did Judge Sam refer to this rule in denying defendants' first motion, but in their brief defendants even cite cases applying that rule.

While the court does not impose sanctions lightly, an objective analysis of defendants' conduct in filing their second motion to dismiss without additional evidence relating to the amount in controversy as of the date the complaint was filed leaves this court with no alternative but to conclude that defendants violated Rule 11. The court finds that in light of the first motion to dismiss and Judge Sam's decision denying that motion, an objective, reasonable and competent attorney would not have made the second motion to dismiss relying on events that occurred after the filing of the complaint. Therefore, the court concludes that defendants have not presented a colorable claim in their second motion, and the claims they have made are baseless and not warranted by existing law.[12]

*Duty of Candor.*

In their second motion to dismiss and supporting memorandum, defendants do not even mention, much less address, Judge Sam's denial of their first motion to dismiss. This is true even though defendants made both motions pursuant to Federal Rule of Civil Procedure 12(b)(1) and based both motions on the assertion that plaintiff had not plead the jurisdictional minimum amount. The court is troubled by this violation of the duty of candor to the court, and has considered this fact in ordering sanctions against defendants.

*Amount of Sanction.*

■ Once a court has determined that a Rule 11 violation has occurred, the court "shall impose upon the person who signed [the motion], a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." Fed.R.Civ.P. 11. The "primary goal" of sanctions imposed under Rule 11 is to deter future litigation abuse. *Dodd Ins. Services v. Royal Ins. Co. of America,* 935 F.2d 1152, 1159 (10th Cir.1991). Accordingly, "the amount of sanctions is appropriate only when it is the *'minimum* that will serve to *adequately* deter the undesirable behavior.'" *Id.* (quoting *White,* 908 F.2d at 683) (emphasis in original).

■ Although determination of the amount of the sanction is within the sound discretion of this court, "[t]he plain language of the rule requires that the court independently analyze the reasonableness of the requested fees and expenses." *White v. General Motors Corp.,* 977 F.2d 499, 501 (1992). Moreover, the court must consider the ability of the sanctioned party to pay the sanction. *Dodd,* 935 F.2d at 1160. While some federal courts have awarded attorney's fees and other expenses as the sanction of choice, *Chemiakin v. Yefimov,* 932 F.2d 124, 129–30 (2d Cir.1991), the United States Court of Appeals for the Tenth Circuit has made clear that courts should not automatically award attorney's fees or employ any other "mathematical calculation" in fashioning Rule 11 sanctions. *Dodd,* 935 F.2d at 1159. In fact, where appropriate, the court may forego monetary sanctions, and instead admonish or reprimand attorneys who violate Rule 11. *Figueroa–Ruiz v. Alegria,* 905 F.2d 545, 549 (1st Cir.1990).

---

**12.** Other courts have found violations of Rule 11 on similar facts. *Cf. Virgin Atlantic Airways v. Nat. Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."), *cert. denied,* —— U.S. ——, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992); *Pipe Trades Council, Local 159 v. Underground Cont.,* 835 F.2d 1275, 1281 (9th Cir.1987) (upholding sanctions where court found "arguments that the two [successive] motions were distinct to be frivolous"); *Vekris v. Peoples Exp. Airlines, Inc.,* 707 F.Supp. 679, 682 (S.D.N.Y.1988) (sanctions warranted where movant "failed to set forth any matters or decisions which this Court overlooked and merely rehashed arguments previously made and decided").

In applying these considerations to the facts at hand, the court finds that imposing plaintiff's reasonable attorneys' fees and expenses as a sanction is the minimum amount necessary to deter future undesirable behavior. Plaintiff's counsel has provided the court with an affidavit stating that plaintiff "has incurred $1,121.90 in attorneys' fees and costs in connection with these motions." (Aff. of Thomas R. Karrenberg of June 22, 1992 at 2, ¶ 3.) In light of the extensive memoranda filed by plaintiff's counsel in defending against defendants' second motion to dismiss and supporting plaintiff's motion for sanctions, the court finds this amount to be a reasonable attorneys' fee. This amount, however, does not include expenses incurred by plaintiff and plaintiff's counsel in preparing for and attending the hearing on defendants' second motion to dismiss. The court therefore finds an additional $200.00 is reasonably necessary to deter future undesirable behavior and should be added to the $1,121.90 set forth in plaintiff's counsel's affidavit. There is no evidence before the court that defendants' counsel is unable to pay this sanction.

CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' Second Motion to Dismiss for Lack of Subject Matter Jurisdiction is denied.

2. Plaintiff's Motion for Sanctions Pursuant to Rule 11 is granted.

3. Defendants' counsel of record in this matter, Douglas M. Durbano and Walter T. Merrill, are hereby ordered to pay plaintiff's the amount of $1,321.90 within twenty (20) days from the date of this order.

4. This case is referred back to the Honorable Dee V. Benson for all further proceedings.

