**DODD INSURANCE SERVICES, INC. and Tom Dodd, Jr., Plaintiffs–Appellants,**

v.

**ROYAL INSURANCE COMPANY OF AMERICA, an Illinois corporation f/k/a Royal–Globe Insurance Companies, Defendant–Appellee.**

No. 89–1368.

United States Court of Appeals, Tenth Circuit.

June 11, 1991.

---

Bradley Pollock of Bell & Pollock, Littleton, Colo., for plaintiffs-appellants.

Alan Epstein (Bruce A. Menk with him, on the brief) of Hall & Evans, Denver, Colo., for defendant-appellee.

Before LOGAN, ALDISERT *, and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

The plaintiffs, Dodd Insurance Services, Inc. (Dodd Insurance) and its employee Tom Dodd, Jr., appeal a district court decision imposing Rule 11 sanctions against them. We affirm the court's decision to impose sanctions. We vacate and remand, however, for a recalculation of the amount of sanctions to be imposed.

■ Dodd Insurance is an independent insurance agency. Under the terms of an "Agency–Company Agreement," it sold insurance policies for Royal Insurance Company of America (Royal). When Royal attempted to terminate the agreement, plaintiffs filed suit alleging ten causes of action. Royal moved for summary judgment on seven of plaintiffs' claims. A federal magistrate judge recommended summary judgment on eight of plaintiffs' claims, and, *sua sponte*, recommended that Rule 11 sanctions be imposed against plaintiffs. The district court adopted the magistrate's summary judgment recommendation on seven of plaintiffs' claims. The court also adopted the magistrate's recommendation to impose Rule 11 sanctions with respect to three of the causes of action alleged, noting that plaintiffs' defamation, breach of fiduciary duty, and negligence claims had "no basis in fact or law, and plaintiffs have not presented a good faith argument for extending, modifying or reversing the existing law...." II R. tab 31 at 7. Plaintiffs now appeal,[1] arguing that sanctions

---

\* The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

1. We have held that generally parties and attorneys sanctioned during litigation "must bear the burden of sanctions to the conclusion of the case and appeal on the merits of a fully adjudicated case." *D & H Marketers, Inc. v. Freedom*

*Oil & Gas,* 744 F.2d 1443, 1446 (10th Cir.1984) (en banc). Nevertheless, we have jurisdiction of the appeal because the district court subsequently entered a final judgment disposing of all issues, which causes the prematurely filed notice of appeal to ripen and save the appeal. *Lewis v. B.F. Goodrich Co.,* 850 F.2d 641, 645 (10th Cir.1988) (en banc). *See also Firstier Mortgage Co. v. Investors Mortgage Ins. Co.,* —

should not have been imposed because the claims were sufficient to withstand summary judgment, or, alternatively, because the claims complied with the requirements of Rule 11. They also challenge the district court's calculation of the amount of sanctions imposed and the procedures it employed in imposing sanctions. We additionally examine whether a pleading which contains several concededly nonfrivolous claims may violate Rule 11.

## I

■■■ In deciding whether to impose Rule 11 sanctions, a district court must apply an objective standard; it must determine whether a reasonable and competent attorney would believe in the merit of an argument. *White v. General Motors Corp.*, 908 F.2d 675, 680 (10th Cir.1990); *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir.1988). In reviewing a district court's decision to impose Rule 11 sanctions, we apply an abuse of discretion standard to both the court's resolution of factual issues and its decision that a pleading was not warranted by existing law or a good faith argument for changing the law. *Cooter & Gell v. Hartmarx Corp.*, — U.S. ——, 110 S.Ct. 2447, 2457–61, 110 L.Ed.2d 359 (1990); *White*, 908 F.2d at 678. Although this standard of review does not preclude us from correcting a district court decision "based ... on an erroneous view of the law or on a clearly erroneous assessment of the evidence," *Cooter & Gell*, 110 S.Ct. at 2461, it requires that we give "[d]eference to the determination of courts on the front lines of litigation" because these courts are "best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted...." *Id.* at 2460. According to the United States Supreme Court, "[s]uch deference will streamline the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court; it will also discourage

litigants from pursuing marginal appeals, thus reducing the amount of satellite litigation." *Id.* With these admonitions in mind we consider the district court's conclusions.

## A

■ Plaintiffs' defamation action arose after Roger Schade contacted Colorado's insurance commissioner to protest the cancellation and nonrenewal of an insurance policy issued by Royal and serviced by Dodd Insurance. Responding to Schade's protest, the Colorado Division of Insurance contacted Amye McClellan, a Royal branch manager, requesting that she provide the division and Schade with a justification for cancelling the policy. During correspondence regarding Schade's protest of cancellation, Tom Dodd, Jr. wrote McClellan a letter expressing his belief that Royal's underwriting guidelines were not part of the insurance policies sold by Dodd Insurance. In the letter, Dodd stated that "we [have never] been informed to advise the insureds of [the guidelines'] content...." I R. tab 4, ex. K. McClellan responded by sending the following allegedly defamatory letter to Tom Dodd, Jr.:

"I'm quite surprised you are unaware of your obligation to discuss more than price with a customer. I would not think you would wait for your company's [sic] to advise you of this obligation. It would seem to me to be part of your role as an independent agent to compare and contrast company rates, rules, procedures, [sic] practices in the course of counseling your customers.

Our guidelines are not a part of our policy. They are to guide you as an agent in the placing of new business, and for future reference on renewals. We do provide to you the Colorado Summary Disclosure forms which you should have from each of your companies, and which you should be giving to your customers. In the Summary Disclosure guides, we do discuss causes for nonrenewal. I'm sure you are aware of these disclosure

U.S. ——, 111 S.Ct. 648, 652, 112 L.Ed.2d 743 (1991) (premature notice of appeal ripens once

final judgment is entered).

guide, [sic] and that you do distribute them for all your companies, as required by the State of Colorado." *Id.,* ex. D. McClellan sent copies of the letter to Schade, the Colorado Division of Insurance, and a Royal underwriter.

We agree with the district court's conclusion that, as a matter of law, the letter is not defamatory. As the magistrate pointed out, the letter is composed largely of McClellan's opinions. Such statements of opinion are not actionable under Colorado law. *See Simmons v. Prudential Ins. Co. of America,* 641 F.Supp. 675, 686 (D.Colo. 1986) (under Colorado law, statement of opinion must imply that it is based on undisclosed defamatory facts to be actionable). Nor can we construe McClellan's statement expressing surprise that Tom Dodd, Jr. was "unaware of [his] obligation to discuss more than price with a customer," to be libel per se or libel per quod. On its face, the statement is not "deplorable, derogatory, or disgraceful," *Sunward Corp. v. Dun & Bradstreet, Inc.,* 811 F.2d 511, 517 (10th Cir.1987) (citing *Bernstein v. Dun & Bradstreet, Inc.,* 149 Colo. 150, 368 P.2d 780, 784 (1962)), or "unmistakably recognized as injurious," *McCammon & Assocs. v. McGraw–Hill Broadcasting Co.,* 716 P.2d 490, 492 (Colo.Ct.App. 1986). Nor does it impute incompetence, dishonesty, or misconduct incompatible with the conduct of plaintiffs' business. *See Bernstein,* 368 P.2d at 783–84 (statement that a certified public accountant failed to respond to a request to be interviewed after preparing and submitting unaudited financial statements not libelous per se as a matter of law). Even when interpreted with the aid of extrinsic evidence, the letter "simply informs Mr. Dodd that he has a duty to fully inform the customer about the coverage under the policy." II R. tab 29 at 6 (magistrate's opinion).[2]

## B

Plaintiffs' breach of fiduciary duty claim essentially alleges that over the course of their business relationship, plaintiffs came to repose trust and confidence in Royal.[3] After reviewing the record on appeal, we conclude that the district court properly granted summary judgment on this claim. Plaintiffs did not undertake to act for the benefit of Royal. *See Destefano v. Grabrian,* 763 P.2d 275, 284 (Colo. 1988). Nor did the business relationship between the parties cause plaintiffs " 'to relax the care and vigilance [they] would and *should* have ordinarily exercised in dealing with a stranger.' " *Dolton v. Capitol Fed. Sav. & Loan Ass'n,* 642 P.2d 21, 23 (Colo.Ct.App.1981) (quoting *United Fire & Casualty Co. v. Nissan Motor Corp.,*

---

**2.** On appeal, plaintiffs point to allegedly untrue notices of nonrenewal and cancellation sent by Royal to Dodd Insurance clients, arguing that they provide further justification for the defamation cause of action. These allegations did not appear in plaintiffs' original complaint, and the magistrate recommended denial of plaintiffs' motion to amend to include these allegations. We read the district court's opinion to have adopted this recommendation. *See* II R. tab 31 at 2–4, 8. Because we cannot find the district court's decision to be an abuse of discretion, we do not consider these allegations in support of plaintiffs' appeal. *See Snider v. Circle K Corp.,* 923 F.2d 1404, 1409 (10th Cir.1991) (district court's decision to deny leave to amend complaint reviewed for abuse of discretion).

**3.** In support of their claim, plaintiffs point to the depositions of several "experts" stating that independent insurance agents like plaintiffs have a fiduciary relationship with their insurance companies. Plaintiffs concede, however, that "[t]he reports of these experts were not available to the Court at the time the Recommendation was made by the Magistrate nor at the time the original Order was entered nor at the time the Motion for Reconsideration was denied." Brief of Appellants at 14–15. In reviewing a district court's decision to grant summary judgment, we consider only those papers before the court at the time of its decision. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2716, at 650–51 (2d ed. 1983); *Guild Trust v. Union Pac. Land Resources Corp.,* 682 F.2d 208, 210 (10th Cir.1982). In reviewing an appeal of Rule 11 sanctions, we similarly will not consider an argument based on materials that were not properly presented to the district court. *See White,* 908 F.2d at 680 ("[I]t is not sufficient for an offending attorney to allege that a competent attorney could have made a colorable claim based on the facts and law at issue; the offending attorney must actually present a colorable claim."). Accordingly, we will not consider the depositions proffered by plaintiffs on appeal.

164 Colo. 42, 433 P.2d 769, 771 (1967)) (emphasis added). Nor were plaintiffs engaged in an employment relationship with Royal. *See Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486, 491–98 (Colo.1989) (en banc) (addressing duty of loyalty arising from employment relationship). Royal and the plaintiffs had a strictly contractual relationship. As the magistrate stated, *see* II R. tab 29 at 19, plaintiffs ran an independently owned insurance agency that made all of its own business decisions and sold insurance policies for companies other than Royal. *See* IV R. 30. Under Colorado law, such a relationship does not give rise to a fiduciary duty.

## C

■ Plaintiffs' negligence claim is based upon Royal allowing McClellan to draft a rehabilitation agreement that allegedly did not comport with Royal's own standards and to write and mail the allegedly defamatory letter. We agree with the district court's conclusion that plaintiffs' allegations do not state a negligence cause of action under Colorado law. "Colorado maintains a sharp distinction between tort and contract actions, defining tort as the breach of a legal duty arising by law, independent of contract." *Bloomfield Fin. Corp. v. National Home Life Assurance Co.*, 734 F.2d 1408, 1414 (10th Cir.1984). *See also Strey v. Hunt Int'l Resources Corp.*, 749 F.2d 1437, 1441 (10th Cir.1984) (Colorado does not recognize a tort action for breach of implied contractual duties), *cert. denied*, 479 U.S. 870, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986).

*Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo.1983), and *Jet Courier Service*, upon which plaintiffs rely, do not blur this distinction. In both cases, the cause of action in tort was supported by a duty imposed by law, independent of the contract. *See Jet Courier Service*, 771 P.2d at 491–98 (analyzing duty of loyalty arising out of employment relationship); *Cosmopolitan Homes*, 663 P.2d at 1042 ("An obligation to act without negligence in the construction of a home is independent of contractual obligations such as an implied warranty of habitability."). Because no such duty exists in the instant case,[4] the district court appropriately granted summary judgment in Royal's favor.

## D

■ In imposing sanctions for plaintiffs' defamation, breach of fiduciary duty, and negligence actions, the district court adopted the magistrate judge's findings that McClellan's letter contained "nothing that even approache[d] defamatory language," that plaintiffs provided no case law or reasoning to support a finding that Royal owed a fiduciary duty to plaintiffs, and that there were "no facts to even suggest negligence and there is an abundance of case law prohibiting the assertion of tort claims for the breach of a contract." II R. tab 29 at 23–24. The district court was correct in finding these claims unmeritorious. Were the claims frivolous? The district court apparently believed that a reasonable and competent attorney would not believe in the merits of any of them. We cannot say that the court abused its discretion in reaching this conclusion.

## II

Before we affirm the district court's decision to impose Rule 11 sanctions we must address an additional issue raised by this case: whether a complaint containing both frivolous and nonfrivolous claims can vio-

---

**4.** Plaintiffs had ample opportunity to identify the duty owed to them by Royal. As the magistrate judge noted:

"at the hearing on this [summary judgment] motion, Mr. Bell, Plaintiffs' attorney, was asked seven times what the duty was that Royal owed to the Plaintiffs. Mr. Bell provided answers such as duty to treat the insurance agent fairly, duty to treat the agent not arbitrarily or capriciously, duty not to discriminate against the agents, duties with regard to the policies, underwriting and that sort of thing, duty to live up to the terms of the contract and duty not to lie or deceive the agents."

II R. tab 29 at 21. We agree with the magistrate judge that "[t]hese generalized standards of conduct labeled as duties are not legal duties applicable to this case capable of being breached." *Id.*

late Rule 11. In the instant case, the district court imposed sanctions on the basis of plaintiffs' complaint. The court found only three of the complaint's ten claims to be frivolous, however, and three claims survived summary judgment.

Under Rule 11, an attorney's signature on a "pleading, motion, or other paper" constitutes a certificate that "it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Fed.R.Civ.P. 11. Some courts have interpreted Rule 11 narrowly, suggesting that sanctions are inappropriate when a pleading contains both valid and frivolous claims. *See, e.g., FDIC v. Tekfen Constr. & Installation Co.,* 847 F.2d 440, 444 n. 6 (7th Cir.1988) ("[E]ven if this minor argument were off the mark, the fact that one argument in an otherwise valid paper is not meritorious" does not warrant Rule 11 sanctions.); *Burull v. First Nat'l Bank of Minneapolis,* 831 F.2d 788, 789 (8th Cir.1987) (lawsuit containing meritless and factually groundless claims did not mandate Rule 11 sanctions because complaint, "taken as a whole, was legally and factually substantial enough to reach a jury"), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988); *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1540 (9th Cir.1986) ("Rule [11] permits the imposition of sanctions only when the 'pleading, motion, or other paper' itself is frivolous, not when one of the arguments in support of a pleading or motion is frivolous."). Other courts interpret Rule 11 more broadly, finding that it may be violated by a pleading containing a single frivolous claim. *See, e.g., Cross & Cross Properties v. Everett Allied Co.,* 886 F.2d 497, 504 (2d Cir.1989) ("[T]o adopt a standard that would deny sanctions for a significant and obviously meritless claim simply because the rest of the pleading was sound strikes us as contrary to this court's established reading of Rule 11."); *Patterson v. Aiken,* 841 F.2d 386, 387 (11th Cir. 1988) ("Rule 11 does not prevent the imposition of sanctions where it is shown that the Rule was violated as to a portion of a pleading, even though it was not violated

as to other portions."); *Frantz v. United States Powerlifting Fed'n,* 836 F.2d 1063, 1067 (7th Cir.1987) ("Rule 11 applies to all statements in papers it covers. Each claim must have sufficient support; each must be investigated and researched before filing.").

■ We hold that a pleading containing both frivolous and nonfrivolous claims may violate Rule 11. To conclude otherwise "would allow a party with one or more patently meritorious claims to pepper his complaint with one or more highly advantageous, yet wholly frivolous, claims, for that party would be assured that the weight of his meritorious claim(s) would shield him from sanctions." *Cross & Cross Properties,* 886 F.2d at 505. *Accord Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1363 (9th Cir.1990) (en banc). The presence of a single frivolous or groundless claim, however, may not always mandate Rule 11 sanctions. For example, a frivolous claim easily disposed of by the opposing party and the court might not warrant sanctions. *Compare Burull,* 831 F.2d at 790 (affirming district court determination that inclusion of meritless claims had no appreciable effect on litigation of otherwise nonfrivolous lawsuit), *and Oliveri v. Thompson,* 803 F.2d 1265, 1280 (2d Cir.1986) (groundless boilerplate allegations did not warrant sanctions since it was "doubtful whether anyone gave the[ ] claims serious consideration or devoted any significant work toward disposing of them"), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987), *with Patterson,* 841 F.2d at 387 ("The district court was within its discretion in imposing Rule 11 sanctions as to a single count of a multiple count complaint, where the effect and cost of that count could be separated from that of the other counts.").

■ The method of pleading plaintiffs employed in the case before us appears to be the type known colloquially as "throw - as - much - mud - against - the - wall - as - you - can - and - hope - some - of - it - sticks." As long tenured appellate judges we have seen hundreds of examples similar to the pleadings in the instant case.

This is the first case in which we have participated where sanctions were imposed when the complaint asserted a mix of frivolous and nonfrivolous claims. It may be that some judges would not have imposed sanctions in this case, perhaps because the inclusion of frivolous claims with some more meritorious is common practice. Nevertheless, we note that only three claims of ten survived summary judgment; we also note the extreme deference the Supreme Court has admonished us to apply to district courts' conclusions in this Rule 11 area. *See Cooter & Gell,* 110 S.Ct. at 2457–61. Rule 11 was strengthened in order to make parties and their lawyers consider the burden of defending frivolous claims. The magnitude of the sanctions imposed in the instant case indicates that the district court apparently concluded that plaintiffs' three frivolous claims substantially burdened Royal and the court. After reviewing the record, we cannot say that this conclusion amounts to an abuse of discretion. Accordingly, we must affirm the district court's decision to impose Rule 11 sanctions.

### III

■ Plaintiffs argue that the district court erred in using a mathematical percentage approach to calculate the amount of Rule 11 sanctions to be imposed. The court found that three of ten claims in plaintiffs' complaint warranted sanctions. After some hesitation, the court imposed sanctions of $39,050.88—an amount equal to thirty percent of Royal's attorney's fees and costs.[5] We agree with plaintiffs that

such an approach to the calculation of Rule 11 sanctions is inappropriate. In fairness to the district court, we note that it did not have the benefit of our *White* decision at the time it imposed the sanctions.

Although Rule 11 serves several functions, including "compensating victims of litigation abuse," *see White,* 908 F.2d at 683, "[d]eterrence is ... the primary goal of the sanctions." *Id.* Accordingly, "the amount of sanctions is appropriate only when it is the '*minimum* that will serve to *adequately* deter the undesirable behavior." *Id.* at 684–85 (quoting *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988)) (emphasis in original). Although a mathematical percentage approach arguably serves the goal of compensation, such an approach fails even to consider whether the penalty imposed is the least severe sanction adequate to deter future abuses. Because the instant district court calculated sanctions without considering the minimum sanction necessary to deter future abuses, we vacate the award of sanctions and remand for further consideration in light of the factors delineated in *White,* 908 F.2d at 684–85.

■ With respect to what attorney time was expended reasonably on each of the frivolous claims in the case, we recognize the difficulties the court had, based upon defense counsel's response to its order. Nevertheless, if defending against these three claims required the same proportionate amounts of attorneys' time as defending against the seven nonfrivolous claims,

5. The district court first ordered Royal to "file an affidavit for attorney fees and a bill of costs pertaining to the defense of these three claims for relief...." II R. tab 31 at 7. Royal did so, seeking $39,050.88; thirty percent of the attorney's fees and costs incurred by Royal in defending the entire suit. The district court responded to Royal's request, noting that "the Supreme Court has expressly rejected the use of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon. *Hensley v. Eckerhart,* 461 U.S. 424, 435 n. 11, 103 S.Ct. 1933, 1940 n. 11, 76 L.Ed.2d 40 (1983)." II R. tab 39 at 1. Accordingly, the court ordered Royal to resubmit its time records, "detailing the actual hours which were reasonably expended on the defense of the three sanctioned claims...." *Id.* at 2. Royal responded that it could not segregate those at-

torney's fees and costs relating to the three sanctioned claims, but that to the best of its knowledge, thirty percent was a reasonable estimate. The court ultimately accepted Royal's estimate of attorney's fees and costs, deciding that since the bulk of attorney's fees and costs arose out of a common core of facts, it was unreasonable to expect Royal to segregate costs by cause of action. *See* II R. tab 42.

Thereafter, the court revised the Rule 11 sanctions, noting that Royal was entitled to only thirty percent of the previous amount—$11,715.26. Royal then moved to alter the court's award of costs to correct an apparent inadvertent error, noting that the $11,715.26 amount awarded represented thirty percent of thirty percent of Royal's litigation expenses. The court then amended its judgment and awarded $39,050.88. *See* II R. tab 47.

it is difficult to see how the three should be considered frivolous; by the same token, if $39,050.88 of attorney's fees were required to defend against these claims, arguably they ought not to be considered frivolous. On remand, the court should keep in mind that "the very frivolousness of the claim[s] is what justifies the sanctions." *White*, 908 F.2d at 684.

## IV

Plaintiffs next argue that the district court erred by not considering their ability to pay the Rule 11 sanctions imposed. Although ability to pay must be considered by a district court, *see id.* at 685, inability to pay should be treated like an affirmative defense, "with the burden upon the parties being sanctioned to come forward with evidence of their financial status." *Id.* In their briefs in response to Royal's application for attorney's fees and costs and in their briefs on appeal, plaintiffs offer no evidence of an inability to pay. They simply point to the great disparity of wealth between Royal and plaintiffs, *see* Brief of Appellants at 43, and assert that "the Plaintiff is a small corporation which recognizes very little, if any, profit and faces financial ruin as the result of the actions taken in part by Royal Insurance Company." II R. tab 36 at 15. The relative financial position of plaintiffs and Royal is wholly irrelevant to plaintiffs' ability to pay Rule 11 sanctions.

Moreover, a bald assertion that plaintiffs are on the verge of financial collapse is plainly insufficient to establish an inability to pay. *See White*, 908 F.2d at 685 (affidavit stating that party would be forced into bankruptcy by requested attorney's fees insufficient to establish inability to pay). Because we are remanding, however, we urge the district court to permit plaintiffs to supplement the record regarding their alleged inability to pay. *See id.* But even if plaintiffs prove a total inability to pay, the court may assess a moderate sanction to deter future abusive litigation. *Id.*

## V

Finally, plaintiffs argue that the district court violated their due process rights by assessing Rule 11 sanctions without a hearing. We disagree. Although a party must receive notice and an opportunity to respond before being sanctioned under Rule 11, *see id.* at 686, "[t]he opportunity to fully brief the issue is sufficient to satisfy due process requirements." *Id.* *See also Oliveri*, 803 F.2d at 1280 (though evidentiary hearing not required before imposition of Rule 11 sanctions, party must receive notice and opportunity to respond). Plaintiffs had ample opportunity to brief the Rule 11 issues raised in this case. Plaintiffs filed a lengthy brief objecting to the magistrate judge's recommendation to grant summary judgment and impose sanctions, *see* III R. (Objections to Recommendations by United States Magistrate and appendix thereto), and twice fully briefed their reasons for opposing the amount of attorney's fees and costs sought by Royal. *See* II R. tabs 36 and 41. Such an opportunity to respond satisfies all due process concerns.

The district court's decision to impose sanctions is affirmed. We vacate and remand, however, for a recalculation of sanctions consistent with this opinion.