**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MEDICAL SUPPLY CHAIN, INC.,

Plaintiff - Appellant,

v.

GENERAL ELECTRIC COMPANY;
GENERAL ELECTRIC CAPITAL
BUSINESS ASSET FUNDING
CORPORATION; GE
TRANSPORTATION SYSTEMS
GLOBAL SIGNALING, LLC;
JEFFREY IMMELT,

Defendants - Appellees.

Nos. 04-3075 & 04-3102
(D.C. No. 03-CV-2324-CM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

---

[*]      After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' requests for decisions on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  These cases are therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Medical Supply Chain, Inc. ("MSC") appeals the district court's dismissal of its federal complaint alleging violations of the antitrust provisions at 15 U.S.C. §§ 1, 2, and 13(e). MSC's complaint also alleges various violations of state law which the district court dismissed without prejudice after dismissing MSC's federal claims. Appellees/cross-appellants General Electric Company ("GE"), General Electric Capital Business Asset Funding Corporation ("GE Capital"), GE Transportation Systems Global Signaling, LLC ("GETS"), and Jeffrey Immelt appeal the denial of their motion for sanctions under Fed. R. Civ. P. 11. After reviewing both appeals, we **AFFIRM** the district court's dismissal of MSC's complaint, but **REVERSE** its determination that no sanctions were required against MSC.

## I

MSC sought to establish a business providing an e-commerce marketplace to support suppliers and purchasers of hospital supplies. Although other companies existed with similar business models, MSC was convinced its superior technology would give it a competitive advantage over its rivals. MSC suffered various setbacks in attempting to begin operations, one of which – the search for office space – serves as the basis for this suit.

In June 2002, the chief executive officer of MSC contacted a leasing agent regarding a commercial office property in Blue Springs, Missouri, and was told

that the building in question was already leased and the lessee, GETS, would only consider a sub-lease of the entire building. Instead of pursuing a sub-lease, MSC contacted the building's owner and obtained a letter of intent to sell the building to MSC, with the sales price being the balance owed on GETS's seven-year lease. In 2003, armed with the letter of intent, MSC approached George Fricke, a property manager at GE Commercial Properties and offered a deal. Under the terms of the May 15, 2003, offer, MSC would purchase the building and agree to release GETS from its lease obligation provided (1) that GETS would pay MSC $350,000 (representing the remainder of the 2003 lease payment), (2) that GETS would provide MSC a bill of sale for the building's furniture and equipment, (3) that the City of Blue Springs would approve MSC's purchase and occupation of the building, and (4) that GE Capital would loan MSC the entire $6,400,000 purchase price for the building and land secured by a twenty-year mortgage on the property, having a 5.4% interest rate with a moratorium on the first full year of mortgage payments. The offer was contingent upon GE's acceptance by May 23, 2003.

The day the offer was made, Fricke responded with (1) a voice mail message stating, "we will accept that transaction," and (2) an e-mail message stating, "GE will accept your proposal to terminate the existing Lease." (I Appellant's App. at 64.) MSC thereafter provided GE Capital with a loan

-3-

package including MSC's financial information. GE Capital later decided not to provide financing and MSC filed its complaint on June 18, 2003.

MSC's complaint is grounded in the belief that certain parties wish to prevent competition in the hospital supply e-commerce market in North America. According to MSC, two e-commerce marketplaces, neither of which are parties to the present suit, Global Health Exchange L.L.C. ("GHX") and Neoforma, Inc., effectively control the hospital supply e-commerce market in North America in that 80% of the hospital supply e-commerce business passes through these marketplaces. MSC alleged that these marketplaces each require that suppliers or purchasers who use either of these marketplaces agree to (1) become a member of the other marketplace as well and (2) deal exclusively with GHX and Neoforma. GE is an initial shareholder of GHX.[1]

In its complaint, MSC raises four federal claims under 15 U.S.C. § 1, which provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." In these four claims, MSC alleged that

---

[1]    A March 29, 2000, press release attached to MSC's amended complaint refers to "GE Medical Systems" as "equal shareholders" of GHX with four other initial shareholders: Johnson & Johnson, Baxter International, Inc., Abbott Laboratories, and Medtronic, Inc. (I Appellant's App. at 109.) For the purposes of this opinion, we will assume that GE Medical Systems is a wholly owned subsidiary of GE.

the refusal of GE, through its subsidiaries GE Capital and GETS, to provide it with a loan under the terms of the proposed agreement was an improper restraint on trade in that it was a "Concerted Refusal to Deal" (count 1), a "Refusal to Deal in Furtherance of a Monopoly" (count 2), a "Refusal to Deal/Denial of Unique Financial Instrument" (count 3), and a "Conspiracy in Restraint of Trade" (count 4).

MSC also raised five claims under 15 U.S.C. § 2, which states: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . ." In these five claims, MSC alleged "Restraint of Trade Through Monopoly" (count 5), "Restraint of Trade Through Attempted Monopolization" (count 6), "Single Firm Refusal to Deal" (count 7), "Refusal to Deal 'Change of Pattern'" (count 8), and "Refusal to Deal Denial of Essential Facility" (count 9). MSC's final federal claim alleged "Discrimination in Services or Facilities" (count 10), under the Robinson-Patman Act, 15 U.S.C. § 13(e), which reads:

> It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or

offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

Finally, MSC raises four state law claims, including breach of contract.

Although the only defendants named in the complaint were Mr. Immelt and the three GE companies, MSC alleged an agreement existed among some combination of (1) the major suppliers/distributors of hospital supplies, (2) the major organizations making group purchases of hospital supplies, (3) GHX, and (4) Neoforma, to prevent other marketplaces from threatening the allegedly inflated costs associated with conducting business through GHX and Neoforma. In its amended complaint MSC alleges that GE, under the direction of Mr. Immelt, was the driving force behind, and controls, the agreement.

Following the filing of MSC's complaint and amended complaint, the defendants filed their motion for dismissal and a motion seeking the imposition of sanctions under Fed. R. Civ. P. 11. The district court granted the defendants' motion to dismiss, dismissing the federal claims on the merits for failure to state a claim and declining to exercise supplemental jurisdiction over the state claims once the federal claims had been dismissed. See 28 U.S.C. 1367(c)(3). Because none of the defendants were competitors in the "market of 'hospital supplies delivered through e-commerce in North America,'" (II Appellant's App. at 492), the district court held that any agreement between a defendant and a competitor in that market to refuse to lend money to MSC would be a vertical agreement to be

-6-

analyzed under the "rule of reason." Under that rule, MSC would have to demonstrate that GE possessed market power in the relevant market in order to be able to restrain trade unreasonably, and that the relevant markets in this case were the commercial real estate market and the related market of potential financiers. Because the defendants did not have market power in these two areas, the district court dismissed the complaint. Although the district court ordered MSC to pay defendants' costs, it denied defendants' motion for sanctions. Both parties appeal.

## II

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). Exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss. Indus. Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 964-65 (10th Cir. 1994). Because the legal sufficiency of a complaint is a question of law, we review de novo a Rule 12(b)(6) dismissal. Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1123 (10th Cir. 2005). In reviewing the district court's grant of a Rule 12(b)(6) motion to dismiss,

> all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party. A 12(b)(6) motion should not be granted unless it

appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quotations and citations omitted).

**A**

In its appeal, MSC brought claims under the first two sections of the Sherman Act.

> The Sherman Act contains a basic distinction between concerted and independent action. The conduct of a single firm is governed by § 2 alone and is unlawful only when it threatens actual monopolization. It is not enough that a single firm appears to "restrain trade" unreasonably, for even a vigorous competitor may leave that impression.
> . . . .
>
> Section 1 of the Sherman Act, in contrast, reaches unreasonable restraints of trade effected by a "contract, combination . . . or conspiracy" between *separate* entities. It does not reach conduct that is wholly unilateral. Concerted activity subject to § 1 is judged more sternly than unilateral activity under § 2.

Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 767-68 (1984) (quotations, citations, and footnotes omitted).

MSC alleges that GE, as a sole entity, monopolized or attempted to monopolize the market of hospital supplies delivered though e-commerce in North America. This claim appears to be the bedrock upon which MSC's 15 U.S.C. § 2 claims rest. MSC argues that a cartel was formed through an agreement or conspiracy among GE and other separate entities such as GHX, Neoforma, and

other hospital supply providers.  MSC's 15 U.S.C. § 1 claims rest on these allegations.  We examine MSC's claim under 15 U.S.C. § 2 first.[2]

**1**

Under the Sherman Act § 2, to state a claim for attempted monopolization, a plaintiff must plead:  "(1) relevant market (including geographic market and relevant product market); (2) dangerous probability of success in monopolizing the relevant market; (3) specific intent to monopolize; and (4) conduct in furtherance of such an attempt."  TV Communications Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1025 (10th Cir. 1992) (quotation omitted).  To state a monopolization claim under § 2, a plaintiff must allege: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  Id. (quotation omitted); Full Draw Prods. v. Easton Sports, Inc., 182 F.3d 745, 756 (10th Cir. 1999).  The district court held that GE and its subsidiaries do not compete in the relevant market of hospital supply e-commerce in North America and that GE could not, therefore, hold monopoly power, or be

---

[2]     While a conspiracy to monopolize is also forbidden under § 2, we restrict our analysis under that section to GE's actions as a single entity since we do not read MSC's complaint as alleging conspiracy to monopolize.

attempting to obtain monopoly power, in that market. MSC presents nothing on appeal that would convince us of district court error in this regard.

Although MSC often treats GHX and Neoforma in its filings as mere tools of GE, evidently because of GE's status as an initial shareholder of GHX and GHX's relationship with Neoforma, and alleges, among other things, that "[t]he defendants have monopoly power in the relevant North American hospital supply e-commerce market through their subsidiaries," (I Appellant's App. at 24), and that GHX was the "alter ego" of GE, MSC presents no factual allegations to support these conclusory statements. The bald allegations in the complaint that GE alone controlled GHX are nothing more than conclusory allegations that GE violated antitrust laws. See TV Communications, 964 F.2d at 1024 ("Conclusory allegations that the defendant violated [antitrust] laws are insufficient."). Not only is the allegation that GE and GHX should be considered one and the same company conclusory, it is inconsistent with the press releases attached to the amended complaint showing that GHX is a limited liability company owned by a number of other companies.[3] It is also inconsistent with MSC's contention that

_____

[3] One of the press releases attached to MSC's amended complaint and dated before the time period at issue in this case states that "the privately held company [GHX] was founded in March 2000 and its membership now includes more than 100 supplier members and more than 400 hospital members . . . [and that e]quity members of GHX include [the five initial members discussed in footnote 1, supra, and] Becton, Dickinson & Co.; Boston Scientific Corporation; C.R. Bard, Inc.;

(continued...)

-10-

these companies were actually working together to restrict entry into the relevant market. Since MSC makes no well-pleaded factual allegations that would support its conclusory legal allegation that GHX was GE's alter ego and should be held responsible for GE's actions, we see no reason to disturb the district court's conclusion that MSC failed to state a claim that GE had illegally monopolized or attempted to monopolize the North American hospital supply e-commerce market.

**2**

MSC's four claims under 15 U.S.C. § 1 also fail. To establish a violation of the Sherman Act § 1, "the plaintiff must allege facts which show: the defendant[s] entered a contract, combination or conspiracy that unreasonably restrains trade in the relevant market." Full Draw Prods., 182 F.3d at 756 (quoting TV Communications, 964 F.2d at 1027). Here, MSC alleges that GE's refusal to finance MSC's purchase of the Blue Springs office building improperly restrained trade in that it prevented MSC's entry into the hospital supply e-commerce market.

Even if MSC's amended complaint were read to allege that defendants agreed with GHX, a competitor of MSC, not to loan money to MSC, the district court found that this would be considered a vertical agreement and subject to the

---

[3](...continued)
Guidant Corporation; Siemens Medical Solutions and Tyco International, Ltd."
(I Appellant's App. at 112.)

-11-

rule of reason. "The rule of reason . . . requires "the fact finder [to] weigh[] all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." Diaz v. Farley, 215 F.3d 1175, 1182 (10th Cir. 2000) (citation omitted). MSC argues that the district court should have read the amended complaint as alleging a horizontal agreement to harm MSC and that such an agreement is a per se restraint of trade. "Per se analysis is reserved for agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." Id. (quotation omitted). MSC has two different theories as to why a horizontal and not vertical agreement was alleged: (1) that the amended complaint alleged that GE, a supplier, agreed with GHX, a customer, to injure another customer, MSC, and that this type of agreement should be treated as a horizontal restraint on trade, and (2) that the formation and operation of GHX should be treated as a horizontal agreement between suppliers with the purpose of, among other things, boycotting other hospital supply e-commerce marketplaces including MSC, and that GE refused to extend financing to MSC pursuant to this boycott.

-12-

MSC's argument fails because even if a horizontal agreement to boycott MSC existed, GE's failure to provide financing would not be considered an antitrust violation. First, "unless the defendants in a group boycott situation 'possess market power or exclusive access to an element essential to effective competition, the conclusion that expulsion of the plaintiff is virtually always likely to have an anticompetitive effect thereby invoking a <u>per se</u> analysis is not warranted.'" <u>Id.</u> at 1182-83 (quoting <u>Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.</u>, 472 U.S. 284, 296 (1985)). "To demonstrate market power a plaintiff may show evidence of <u>either</u> power to control prices <u>or</u> the power to exclude competition." <u>Westman Comm'n Co. v. Hobart Int'l, Inc.</u>, 796 F.2d 1216, 1225 n.3 (10th Cir. 1986) (quotations omitted). Second, even where a per se violation of 15 U.S.C. § 1 is involved, a plaintiff must still show that it suffered an antitrust injury. "The per se rule . . . does not indicate whether a private plaintiff has suffered antitrust injury and thus whether he may recover damages." <u>Atl. Richfield Co. v. USA Petroleum Co.</u>, 495 U.S. 328, 341-42 (1990)

MSC's allegation that GE's refusal to loan it money prevented MSC from entering the hospital supply e-commerce market and that it, therefore, suffered an antitrust injury is untenable. First, MSC did not have to purchase an office building to enter the hospital supply e-commerce market. In fact, its initial plan

was to rent office space. Second, while like any new business it did need funds to start operations, there was no requirement that it obtain these funds from GE. GE does not have market power in the financial market. The potential anti-competitive danger presented by an alleged agreement between major players in any market is that those players will use the power they hold in that market to stifle competition. An agreement between those same players to take actions in markets where they are not major players and hold no market power poses no danger because consumers in those markets have other options from which to choose. Even if all the members of the alleged cartel agreed that GE should not make any loans to MSC, such an agreement is not illegal in the absence of some sort of power in the commercial loan market.

MSC's attempt to catagorize the loan it sought as a "unique financial instrument" that it could not replicate at any bank or in the venture funds markets is unpersuasive. Any "uniqueness" of MSC's loan needs was caused by MSC's weak financial position, not GE's status as a lender.

**3**

MSC also raised one Robinson-Patman Act Claim, 15 U.S.C. § 13(e), which was dismissed by the district court on the ground that the Act only bars price discrimination in the sale of commodities, not discrimination in the supply of a real estate lease or financing. MSC does not argue trial court error in regard

to the dismissal of this claim, nor do we discern any error in that ruling or in the district court's dismissal of the state law claims without prejudice following dismissal of all of the federal claims.[4]

## B

Defendants argue in their cross-appeal that the district court abused its discretion by denying its motion for sanctions. Defendants allege that MSC's amended complaint violated the requirements of Fed. R. Civ. P. 11(b) that a pleading not be "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" and that "the claims, defenses, and other legal contentions therein are warranted by existing

---

[4] MSC's appellate briefs also present a truncated argument that the amended complaint raised a qui tam False Claims Act claim. MSC's only support for this argument is the fact that the amended complaint alleged, in its description of the parties of the suit, that Jeffrey Immelt knew that the alleged conspiracy would "caus[e] Medicare to be defrauded out of billions of dollars over paid in artificially inflated claims for devices and procedures utilizing the cartel's supplies" and that the "decreased access to healthcare" caused by the conspiracy "would cause employers and health insurers to reduce coverage and benefits to the nation's citizens leading to injury and death." (I Appellant's App. at 55-56.) This claim was not properly plead in the complaint. The amended complaint clearly set forth and numbered the claims that were being raised. The complaint "must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Green Country Food Mkt., Inc. v. Bottling Group, LLC, 371 F.3d 1275, 1279 (10th Cir. 2004). Neither the parties nor the district court ever discussed the False Claims Act and it is unreasonable to argue that defendants should have been on notice of such a claim.

-15-

law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b). If a court determines that a party has violated Rule 11(b), a court may in its discretion impose sanctions. Fed. R. Civ. P. 11(c). In making its decision whether Rule 11 sanctions are merited: "a district court must apply an objective standard; it must determine whether a reasonable and competent attorney would believe in the merit of an argument. In reviewing a district court's decision to impose Rule 11 sanctions, we apply an abuse of discretion standard." Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am., 935 F.2d 1152, 1155 (10th Cir. 1991) (quotation omitted). In its Memorandum and Order, the district court recognized that in an earlier related case it had reminded MSC's counsel of his obligations under Fed. R. Civ. P. 11 and cautioned him to take greater care in the future in ensuring that claims he brought on behalf of clients were supported by the law and the facts. Nevertheless, the district court was unwilling to conclude that MSC's Amended Complaint was so meritless or otherwise frivolous as to warrant sanctions. The court also pointed to the fact that it had not addressed MSC's state law claims as a factor in its decision.

Defendants are correct that Rule 11 sanctions can be imposed even when some claims are not frivolous. Dodd Ins. Servs., Inc., 935 F.2d at 1158. It is clear that at least MSC's claims against Jeffrey Immelt in his individual capacity

were frivolous in that no allegation was made that Immelt had any personal connection to MSC's alleged injury or even that he knew MSC existed. Therefore, it was abuse of discretion not to find that portion of the amended complaint frivolous. As for MSC's other claims, the district court did not address the state claims and, considering our deferential standard of review, we cannot say that the district court abused its discretion in refusing to award sanctions against MSC for bringing those claims.

### III

Consequently, we **AFFIRM** the district court's dismissal of MSC's federal claims on the merits and its dismissal of MSC's state claims without prejudice. We **REVERSE** the district court's order denying defendants' motion for Rule 11 sanctions and **REMAND** to the district court for a determination of the proper sanction to be assessed for MSC's inclusion of Jeffrey Immelt as a defendant in his individual capacity.

Entered for the Court

Carlos F. Lucero
Circuit Judge