**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CALEB SALMON,

     Plaintiff - Appellant,

v.

NUTRA PHARMA CORP.,

     Defendant - Appellee.

No. 16-5122
(D.C. No. 4:14-CV-00265-CVE-TLW)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **McKAY**, and **LUCERO**, Circuit Judges.
_____

Caleb Salmon appeals the district court's order imposing sanctions under

Fed. R. Civ. P. 11. Exercising jurisdiction under 28 U.S.C. § 1291, and finding no

abuse of discretion, we affirm the district court's order.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

Mr. Salmon filed a pro se complaint in 2014 against numerous parties, many of whom were identified as John Doe defendants.[1]  He alleged that his cell phone number was on the national do-not-call registry, yet he had received hundreds of spam phone calls, autodialed calls, prerecorded messages, and texts.  Mr. Salmon claimed that he had no prior business relationship with these callers, nor had he consented to being contacted on his cell phone.  He alleged claims under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and state law.  As relevant here, the TCPA prohibits persons within the United States from:

> mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii).

The district court permitted Mr. Salmon to serve subpoenas in an attempt to identify the Doe defendants.  Several months later, he moved to amend his complaint to dismiss the Doe defendants and name other parties as defendants.  These new defendants included Steve Gewecke, MyNyloxin Group, and Nutra Pharma Corp. (NPC).  Mr. Salmon alleged that NPC sells a product called Nyloxin; Mr. Gewecke is an officer of MyNyloxin Group, which is an organization of professional marketers who sell Nyloxin; and Mr. Gewecke, MyNyloxin Group, and other named defendants

---

[1] At the time Mr. Salmon filed his complaint he was a law student.  He is now a practicing attorney in Oklahoma.

are part of a multi-level marketing scheme (MLM) that uses autodialing software to market NPC's products. He also alleged that Mr. Gewecke, MyNyloxin Group, and NPC were engaged in the sale of unregistered securities.

Within the allegations directed at these defendants, Mr. Salmon averred that he had received the following prerecorded messages on his cell phone voice mail:

> Stop what you're doing for the next 30 seconds and listen to this incredibly important message from Erica and her business partner, Johnny "Cash". If you want more money in your life today, and you're willing to invest only 7 short minutes, we will show you how you can simply and easily advertise a phone number that will give you direct and daily cash flow. It's so easy a fifth grader can do it, it's not MLM, there's no cold calling, I promise you that you will not have to bug your friends and family. To see how this works, just call 321-332-1516. Again, that's 321-33[6]-1516. You'll be really glad you did!
>
> . . . .
>
> We're Erica and Steve, and we want to show you how to create daily cash flow. If you're willing to take 7 minutes of your time, I want to show you how you can advertise a phone number and create daily and direct cash flow every single day, up to $1000 a day! You can visit us at yourtotalcashcontrol.com; again yourtotalcashcontrol.com for more details. We look forward to talking to you.
>
> . . . .
>
> Would you like to receive 100 incoming calls each month from people with network marketing experience who want to know about your business? That's right. Receive 100 incoming calls from experienced network marketers who want to know more about your business. For more information, press "1" now, or dial 314-669-2629, that's 314-669-2629. Press "2" to be removed.
>
> . . . .
>
> Stop what you're doing and listen to this important message from Erika and Paul and their business partner, "Johnny Cash." This is if you want more money in your life call us at 203-295-7551. Call back the number on your Caller ID. Could you use an extra $1000 or $2000 a week

or more?  Are you willing to take only 7 short minutes so we can show you how to advertise a phone number that will give you more money every day?  Visit us online right now at totalcashcontrol.com to see how this works.  It's so easy a fifth grader can do it.  It's not MLM, there's no cold calling, I promise you won't have to bug your friends or family and there is no selling required.  Call back the number on your Caller ID, or visit us online at totalcashcontrol.com and you'll be glad you did!

Aplt. App. at 71-73 (italics and internal quotation marks omitted).[2]

In response to the amended complaint, NPC moved for sanctions under Rule 11.  It also moved to dismiss the claims against it, arguing that Mr. Salmon failed to allege that any defendant had contacted him for the purpose of selling a product offered by NPC.  He responded that the calls he received could be traced to an MLM operating on behalf of NPC.  The district court granted NPC's dismissal motion.  Regarding his TCPA claims against NPC, the court stated:

> [T]he amended complaint fails to allege that plaintiff received a call concerning the sale of any product distributed by NPC and it is not possible to infer that the alleged MLM could have been acting on behalf of NPC. . . . Plaintiff may have had a TCPA claim against NPC if he had received an autodialed solicitation concerning Nyloxin.  However, plaintiff received calls about money-making schemes and marketing programs, and neither Nyloxin nor NPC was mentioned in the messages received by plaintiff. Plaintiff also argues that NPC and MyNyloxin sold unregistered securities called "media units" and the media units were used to fund infomercials. However, the messages received by plaintiff do not concern the sale or purchase of media units. . . .  Plaintiff's allegations concerning the existence of an MLM are irrelevant to the calls he allegedly received on his cell phone, and it is not necessary to reach plaintiff's strained theory of agency liability against NPC.  The amended complaint does not include any allegations that would reasonably support an inference that the calls placed by unidentified persons to plaintiff's cell phone had anything to do with

---

[2] Mr. Salmon's amended complaint explicitly connected only one of these voice messages to a named defendant.  *See* Aplt. App. at 72 (stating upon information and belief that a particular number mentioned in one of the messages "is used by Darick Patterson marketing a calling system to multi-level marketers").

4

NPC or its products, and plaintiff's TCPA claim against NPC should be dismissed.

Aplt. App. at 143-44 (citation omitted).

In response to NPC's Rule 11 motion, Mr. Salmon argued that he had carefully chosen NPC as a defendant after many hours of investigation, which he claimed had demonstrated a legitimate factual basis for his claim that NPC was part of an MLM formed to sell NPC's products. The district court granted the Rule 11 motion, holding that

> [n]o reasonable attorney would have brought a claim against NPC based on the information in plaintiff's possession, and plaintiff's claims against NPC are nothing more than an unsupported conspiracy theory based upon many layers of conjecture. The messages left on plaintiff's cell phone have no apparent connection to NPC, and there is no mention of any product sold by NPC in the messages. Even if plaintiff is correct that MyNyloxin operates an MLM, plaintiff has made no credible allegation that the MLM was responsible for the calls placed to his cell phone. The evidence provided by plaintiff does not establish any connection between the persons who allegedly called him and the MLM, and it is unclear that the alleged existence of an MLM has any relevance to plaintiff's claims against NPC.

*Id.* at 149-50. The district court ultimately imposed a two-part sanction on Mr. Salmon in a separate order: (1) it awarded NPC $3,000 in attorney fees, and (2) it ordered Mr. Salmon "to speak to students at the University of Tulsa College of Law about the dangers of filing a lawsuit as a licensed legal intern." *Salmon v. CRST Expedited, Inc.*, No. 4:14-CV-00265-CVE-TLW, slip op. at 8 (N.D. Okla. July 19, 2016), ECF No. 130.[3]

---

[3] Mr. Salmon did not include in the appellants' appendix the district court's separate order imposing the sanction under Rule 11.

On appeal, Mr. Salmon challenges only the district court's holding that he violated Rule 11. He argues that the district court erred in finding that his factual contentions in his claims against NPC lacked evidentiary support. He does not appeal the district court's dismissal of his claims against NPC, nor does he argue error in the amount or the nature of the sanction imposed.

## II.    Discussion

### A.    Appellate Jurisdiction

NPC argues that we lack jurisdiction over Mr. Salmon's appeal because the district court's opinion and order imposing the Rule 11 sanction was not a final order under 28 U.S.C. § 1291. NPC notes that Mr. Salmon filed a notice appealing that ruling, but the district court did not enter a final order in this case until a month later. Once the district court adjudicated all remaining claims, however, Mr. Salmon's premature notice of appeal ripened. *See Dodd Ins. Serv., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1154 n.1 (10th Cir. 1991) (holding that premature notice appealing Rule 11 sanctions ripened after district court entered final judgment on all issues); *see also Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645 (10th Cir. 1988); Fed. R. App. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order--but before the entry of the judgment or order--is treated as filed on the date of and after the entry."). Nor was Mr. Salmon required to file a supplemental notice of appeal, as NPC contends. His appeal does not challenge an order entered subsequent to his notice of appeal. Thus, the case cited by NPC is inapposite. *See E.E.O.C. v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1249-50 (10th Cir. 1999) (holding

6

that the reasoning in *Lewis* does not extend to "the distinct situation of a district court's decision entering a subsequent separate and collateral order regarding attorneys' fees," *id.* at 1250).

Moreover, we agree with the parties that the sanctions imposed are sufficiently definite to confer appellate jurisdiction on this court. "It is well settled that a final order is one which ends the litigation and leaves nothing for the court to do but execute on the judgment." *Phelps v. Washburn Univ. of Topeka*, 807 F.2d 153, 154 (10th Cir. 1986) (holding an attorney fees award is final only after the amount has been determined) (internal quotation marks omitted). Here, the district court has stayed its sanction order pending this appeal. Although the specifics of the non-monetary portion of the sanction are not yet finalized, the sanction imposed, including the monetary amount, is otherwise fully determined and is awaiting execution by the district court.

We have jurisdiction over Mr. Salmon's appeal.

**B.      Standard of Review**

"On appeal, we apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination. A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182-83 (10th Cir. 2015) (internal quotation marks omitted). This deferential standard of review "free[s] appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the

district court." *Dodd Ins. Serv.*, 935 F.2d at 1155. Thus, "[i]t is not the role of the circuit court to second-guess the district court's Rule 11 determinations," and "we cannot reverse that court simply because, had we been the triers of fact, we might have decided the case differently." *Hughes v. City of Fort Collins*, 926 F.2d 986, 989 (10th Cir. 1991).

**C.     Claim of Error in District Court's Determination that Mr. Salmon Violated Rule 11**

Rule 11 provides that, by signing a pleading, an "unrepresented party certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). After finding a Rule 11 violation, the district court "may impose an appropriate sanction." Fed. R. Civ. P. 11(c)(1). "In deciding whether to impose Rule 11 sanctions, a district court must apply an objective standard; it must determine whether a reasonable and competent attorney would believe in the merit of an argument." *Dodd Ins. Serv.*, 935 F.2d at 1155.

The district court found that Mr. Salmon's claims against NPC violated Rule 11. Mr. Salmon contends that his pre-filing investigation showed that: Mr. Gewecke is the owner of the domain name "totalcashcontrol.com," which was mentioned in some of the prerecorded messages on Mr. Salmon's cell phone; Mr. Gewecke is also President of MyNyloxin Group; MyNyloxin Group is a distributor of NPC's

8

products; and MyNyloxin Group was engaged in a massive telemarketing operation on behalf of NPC. He argues that the district court failed to consider some of his exhibits, which he says established "the crucial connection between NPC and MyNyloxin, revealed the existence of the MyNyloxin Telemarketing Division, and documented NPC's express approval and consent to the telemarketing campaign through its CEO." Aplt. Opening Br. at 9.

Mr. Salmon's contention misconstrues the district court's decision. The court did not hold that he lacked evidence of a connection between MyNyloxin and NPC, or that his allegations regarding the existence of a MyNyloxin Group telemarketing campaign were not well-grounded in fact. It held that there was no objective evidentiary basis to conclude that a MyNyloxin Group MLM was the source of the voice messages that Mr. Salmon received. That is the "crucial connection" the court found was missing, and the documents Mr. Salmon relies on do not establish it. Rather, his exhibits indicate that Mr. Gewecke's business dealings were not limited to MyNyloxin Group. *See* Aplt. App. at 58 (noting Mr. Gewecke's 20-year career in "direct sales/network marketing"). Thus, although Mr. Salmon may have had an objective evidentiary basis for his claims against Mr. Gewecke based on his ownership of totalcashcontrol.com, the district court found that his claims against NPC had no basis in fact.

Mr. Salmon's other arguments likewise misunderstand the district court's order. In particular, he contends that self-identification by the caller in a prerecorded message—in this case, some indication in the message that it pertained to NPC,

9

Nyloxin, or MyNyloxin Group—is only one way to prove the caller's identity. He maintains that "any reliable method of tracing the call to its source should suffice." Aplt. Opening Br. at 12. But here Mr. Salmon did not use a reliable method to identify NPC as the source of the calls he received. Nor was he sanctioned because he did not have a factual basis to plead a principle/agent relationship between NPC and Mr. Gewecke or NPC and MyNyloxin. He was sanctioned because he lacked evidentiary support to allege a connection between NPC and the voice messages that he received.

The district court found that Mr. Salmon "had no objective basis to believe that NPC was responsible in any way for the calls placed to his cell phone," and that "[n]o reasonable attorney would have brought a claim against NPC based on the information in [his] possession." Aplt. App. at 149. We cannot say that the court abused its discretion in reaching this conclusion.

## III. Conclusion

The decision of the district court is affirmed.

Entered for the Court

Monroe G. McKay
Circuit Judge

10